**Fredy E. BURAYE, Plaintiff,**

v.

**EQUIFAX, an unknown entity; Transunion, an unknown entity; Nationwide Credit, Inc, a debt collection agency and Does 1–100 inclusive, Defendants.**

**No. CV 08–00423 MMM (AGRx).**

United States District Court,
C.D. California.

June 6, 2008.

William J. Houser, William J. Houser Law Offices, Reseda, CA, for Plaintiff.

Thomas P. Quinn, Jr., Nokes and Quinn, Laguna Beach, CA, Donald E. Bradley, Musick Peeler and Garrett LLP, Costa Mesa, CA, Jeffrey A. Topor, Tomio B. Narita, Simmonds and Narita LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

MARGARET M. MORROW, District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

Plaintiff Fredy Buraye is a consumer who resides in California.[1] Defendants Equifax and Transunion are credit reporting agencies.[2] Defendant Nationwide Credit, Inc. is allegedly "a collection agency and/or a credit reporting agency."[3] Buraye asserts that in early 2007, Nation-

---

1. Complaint, ¶ 1.

2. *Id.,* ¶¶ 2–3.

3. *Id.,* ¶ 4.

wide reported "wildly untrue, unverified and grossly negligent erroneous information" to defendants Equifax and Transunion.[4] Buraye alleges that Nationwide falsely reported to Equifax and Transunion that (1) he owed DirectTV $237.00; (2) he used the alias "Fredy Perez"; and (3) he lived at 3961 Hillcrest Ave., # 6 in Los Angeles.[5] Buraye contends that these false statements had a "detrimental effect [on his] character," in that they portrayed him "as a deadbeat who didn't pay his bills"; he also asserts they damaged his credit score and his ability to borrow at lower rates.[6]

On May 6, 2007, Buraye notified both Equifax and Transunion of the mistakes in his credit report.[7] On May 12, 2007, Transunion responded that the allegedly false information did "not currently appear on his or her credit report."[8] On May 18, 2007, Equifax responded that it had deleted the information.[9] In September 2007, Buraye allegedly discovered that Equifax and Transunion were once again including the purportedly false information in their credit reports.[10]

### B. Procedural History

On October 11, 2007, Buraye commenced an action against the named defendants and certain fictitious defendants in Los Angeles Superior Court. Buraye's complaint asserted claims for (1) negligent violation of the California Consumer Credit Reporting Agencies Act ("CCCRAA") against all defendants; (2) willful violation of the CCCRAA against Transunion and Equifax; (3) common law negligence against all defendants; and (4) common law defamation against all defendants. Buraye sought actual damages according to proof; statutory damages of $5,000.00; damages for pain and suffering; costs; attorney's fees; punitive damages; and interest as allowed by law.[11]

On January 23, 2008, defendants removed the case to this court based on diversity of citizenship. They alleged that they did not become aware that the amount in controversy exceeded the jurisdictional minimum set forth in 28 U.S.C. § 1332 until Buraye served answers to requests for admission in which he denied that he was not seeking more than $74,999.99 in damages.[12]

## II. DISCUSSION

### A. Standard Governing Motions for Judgment on the Pleadings

Judgment on the pleadings is appropriate "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading &*

4. *Id.*, ¶ 8.

5. *Id.*

6. *Id.*

7. *Id.*, ¶¶ 9–10.

8. *Id.*, ¶ 11.

9. *Id.*, ¶ 12.

10. *Id.*, ¶¶ 13–14. Buraye asserts that Equifax and Transunion continue to report the false information to the present time. (*Id.*, ¶ 15.)

11. Complaint, Prayer for Relief, ¶¶ 1–7.

12. On February 13, 2008, the court issued an order to show cause that directed Equifax and Transunion, which are limited liability corporations, to demonstrate that there was complete diversity by providing evidence regarding the citizenship of each of their individual members. On March 19, 2008, the court discharged the order to show cause after Equifax and Transunion demonstrated that the requirement of complete diversity was met.

*Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir.1997); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1990). In deciding the motion, the court may consider only the pleadings, that is, "the complaint, the answer, and any written instruments attached as exhibits." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); see also See Fed.R.Civ.Proc. 12(c) (providing that a Rule 12(c) motion for judgment on the pleadings should be converted into a Rule 56 motion for summary judgment if matters outside the pleadings are considered by the court).

The court must accept as true all factual allegations made by the non-moving party. See *Enron*, 132 F.3d at 528 (a motion for judgment on the pleadings is properly granted "when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law"); *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir.1996) (same); *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989) (in reviewing a Rule 12(c) motion, the court must assume the facts alleged by the non-moving party are true, and must draw all inferences in favor of that party). The court need not, however, assume the truth of legal conclusions in the pleadings simply because they take the form of factual allegations. See *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

**B. Buraye's Claims Against Nationwide**

As noted, Buraye has alleged claims against Nationwide for negligent violation of the CCCRAA, common law negligence, and defamation.[13] Nationwide argues that these claims must be dismissed because they are barred by the preemption provisions of the Fair Credit Reporting Act ("FCRA").

**1. The FCRA's Preemption Provisions**

"The FCRA contains two preemption sections restricting state law claims that apply to persons who furnish information under the FCRA." *Woods v. Protection One Alarm Monitoring, Inc.*, CV 06–398 SMS, 2007 WL 2391075, *7 (E.D.Cal. Aug.22, 2007). "When first enacted in 1968, the FCRA had one section dealing with preemption of state law claims." *Weseman v. Wells Fargo Home Mortg., Inc.*, CV 06–1338 ST, 2008 WL 542961, *2 (D.Or. Feb.22, 2008). 15 U.S.C. § 1681h(e), which is more specific than the FCRA's second preemption provision, provides:

"Except as provided in section 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action based in whole or part on the report except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).

As can be seen, this provision "only preempts state claims for defamation, invasion of privacy and negligence and only to the extent such claims are based on the

---

**13.** Buraye has not asserted a claim for willful violation of the CCCRAA against Nationwide.

disclosure of certain types of information and are not based on malice or willful intent to injure." *Weseman*, 2008 WL 542961 at *2.

In 1996, Congress amended the FCRA to add another, more general preemption provision. See *Weseman*, 2008 WL 542961 at *2. Section 1681t(b)(1)(F) provides that

"[n]o requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—(i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996)." [14] 15 U.S.C. § 1681t(b)(1)(F).

### 2. Whether § 1681t(b)(1)(F) Totally Preempts State Law Claims Against Furnishers of Information

■ Numerous courts have recognized that there is an apparent tension between these two preemption provisions. The district court in *Weseman* noted that "[i]f § 1681t(b)(1)(F) is construed to preempt all state law causes of action against credit information furnishers, then § 1681h(e) [, which allows state law claims when plaintiff alleges malice or willful intent to injure,] is superfluous and effectively repealed." *Weseman*, 2008 WL 542961 at

*3. "There is no Ninth Circuit authority attempting to reconcile the two apparently conflicting preemption statutes." *Woods*, 2007 WL 2391075 at *7; see also *Weseman*, 2008 WL 542961 at *3 ("To date, neither the Ninth Circuit nor any other circuit court has addressed the scope of preemption under the FCRA"). As a result, district courts have developed three different approaches to reconcile the provisions.

These are the "total preemption" approach, the "statutory" approach, and the "temporal" approach. See *Weseman*, 2008 WL 542961 at *3; *Woods*, 2007 WL 2391075 at *7–8. The differences between them have been explained as follows:

" 'Under the 'total preemption' approach, [§ 1681]t(b)(1)(F) does indeed preempt all state law claims against furnishers of credit information arising from conduct regulated by [§ ] 1681s–2, thus effectively repealing the earlier preemption provision, [§ ] 1681h(e). Under the 'temporal' approach, preemption depends on whether the cause of action arises before or after a credit information furnisher has notice of a consumer dispute. Finally, under the 'statutory' approach, [§ 1681]t(b)(1)(F) preempts only state law claims against credit information furnishers brought under state statutes, just as [§ ] 1681h(e) preempts only state tort claims.' " *Weseman*, 2008 WL 542961 at *3 (quoting *Manno v. Am. Gen. Fin. Co.*, 439 F.Supp.2d 418, 424–25 (E.D.Pa. 2006)).[15]

---

**14.** "The two state statutes that are exempted from preemption by this section both involve the obligations of credit information furnishers to provide accurate information to credit reporting agencies." *Weseman*, 2008 WL 542961 at *2.

**15.** See also *Woods*, 2007 WL 2391075 at *7–8 ("[(1)] Some courts have held that

§ 1681t(b)(1)(F) completely subsumes § 1681h(e) because it provides absolute preemption and was added after § 1681h(e).... [(2)] Other district courts have determined that § 1681t(b)(1)(F) does not preempt common law tort claims, and such claims may be brought but have reached this conclusion by two different avenues. The first group con-

Courts in the Ninth Circuit have utilized both the "total preemption" and "statutory" approaches. The majority, however, has favored the "total preemption" approach, determining that § 1681t(b)(1)(F) totally preempts all "state statutory and common law causes of action which fall within the conduct proscribed under § 1681s–2." *Woods*, 2007 WL 2391075 at *9; see also, e.g., *Weseman*, 2008 WL 542961 at *3 ("District courts in the Ninth Circuit have employed both the 'total preemption' and 'statutory' approaches, with the majority favoring the 'total preemption' approach"); *Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*, 536 F.Supp.2d 1207, 1215 (E.D.Cal.2008) ("15 U.S.C. § 1681t(b)(1)(F) preempts Ms. Johnson's defamation claim based on allegations that Unifund reported information to a credit reporting agency"); *Schreiber v. Siemons*, C 07–2467 MJJ, 2007 WL 2344885, *3 n. 8 (N.D.Cal. Aug.14, 2007) ("Although the Ninth Circuit has not yet ruled on this issue, 'the majority of district courts in the Ninth Circuit have held that the FCRA preempts state statutory and common law causes of action which fall within the conduct proscribed under § 1681s–2(a),'" quoting *Pacheco v. Citibank (South Dakota), N.A.*, C 07–1276 JSW, 2007 WL 1241934, *2 (N.D.Cal.

Apr.27, 2007)); *Trout v. BMW of North America*, CV 04–1466 BES LRL, 2007 WL 602230, *3 (D.Nev. Feb.20, 2007) ("Trout's negligence claims are based upon the assertion that BMW Financial failed to take steps as necessary to direct correction, removal or otherwise remedy the existing false and damaging credit information. This is the exact type of conduct which is prohibited under § 1681s–2(a)–(b) and thus is preempted under § 1681t(b)(1)(F)"); *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1181 (E.D.Cal.2005) ("On its face, the FCRA precludes all state statutory or common law causes of action that would impose any 'requirement or prohibition' on the furnishers of credit information. Because Plaintiffs' State Claims are based on alleged injury arising purely from the reporting of credit information by a furnisher of credit, they are completely preempted. Several courts that have analyzed this preemption clause concur" (citations and footnote omitted)); *Davis v. Maryland Bank*, No. 00–04191, 2002 WL 32713429, *13 (N.D.Cal. June 19, 2002) (holding that the general preemption provisions of § 1681t(b)(1)(F) preempt all state claims falling within the coverage of § 1681s–2, including those involving malicious and willful tortious conduct).[16]

tends that 1681t(b)(1)(F) applies to state statutes only, and that § 1681h(e) applies to common law torts.... The second group adheres to the rationale that § 1681h(e), as the specific preemption clause, trumps the more general language of § 1681t(b)(1)(F). Therefore, if the consumer properly alleged malice, that is, gross negligence or willful intent to injure, on the part of the furnisher of credit information, the FCRA does not preempt a common law claim for defamation.... Under either rationale, plaintiffs who overcome § 1681h(e)'s malice/willful intent standard may pursue common law actions against furnishers of information.... [ (3) ] This approach applies a temporal formula to the FCRA's preemption sections based on § 1681t(b)(1)(F)'s absolute immunity for any matter regulated by

§ 1681s–2, which sets out the responsibilities of furnishers of information. Under this rationale the furnisher's conduct must be broken down into two discrete time periods: (1) The time period between when the debt was incurred and the time the furnisher receives notice from the CRA that the conduct is in dispute, and (2) the time period after notice of the dispute had been received" (citations omitted)).

**16.** But see *Weseman*, 2008 WL 542961 at *4 ("[T]his court is persuaded by the reasoning of the courts which adopt the 'statutory' approach. It is noteworthy that this is not the only court in which judges from the same district disagree on this issue. In *Gorman v. Wolpoff & Abramson, LLP*, 370 F.Supp.2d

As respects state law claims implicating conduct regulated by § 1681s–2, this court agrees with the majority's "total preemption" approach for the reasons set forth in *Davis v. Maryland Bank*, No. 00–04191, 2002 WL 32713429 (N.D.Cal. June 19, 2002). Citing *Jaramillo v. Experian Information Solutions, Inc.*, 155 F.Supp.2d 356 (E.D.Pa.2001), the *Davis* court reasoned that

"'[t]he plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.'" *Davis*, 2002 WL 32713429 at * 13 (quoting *Jaramillo*, 155 F.Supp.2d at 362).

The court also observed that

"the legislative history demonstrates that Congress enacted section 1681t(b)(1)(F) in order to create a uniform scheme governing the disclosure of credit information. See *Kodrick v. Ferguson*, 54 F.Supp.2d 788, 794 (N.D.Ill. 1999) (discussing legislative history of FCRA's preemption provisions). Allowing common law tort claims which implicate the same subject matter as section 1681s–2(1) would undermine Congress' intention to create a uniform system of

protection for consumers. In light of the foregoing, the Court finds that section 1681t(b)(1)(F) preempts both state statutory and common law causes of action which implicate the subject matter of section 1681s–2. Thus, the question is to what extent Plaintiff's state claims fall within the subject-matter of this section." *Id.*

See also *Roybal*, 405 F.Supp.2d at 1181 ("The FCRA establishes standards for the collection, communication and use of consumer information for business purposes. Through the FCRA, Congress has elected to establish a scheme of uniform requirements regulating the use, collection and sharing of consumer credit information. In order to maintain this uniformity, Congress included express preemption clauses in the FCRA relating to various aspects of consumer credit reporting. One area Congress has chosen to preempt is the regulation of furnishers of credit information").

### 3. Whether the Preemption Provision Applies to Buraye's Common Law Claims

█ Based on the plain language of § 1681t(b)(1)(F), the court concludes that Buraye's state law negligence and defamation claims are preempted by the FCRA. The allegations in Buraye's complaint clearly implicate the subject matter of § 1681s–2. As noted, Buraye alleges that Nationwide furnished inaccurate information to credit reporting agencies Equifax and Transunion.[17] This claim falls directly

---

1005, 1010 (N.D.Cal.2005), Judge Ware rejected *Davis[,* 2002 WL 32713429,] 'because it violates a canon of statutory construction by allowing a general statute to trump a specific statute.' And in contrast to *Roybal*, [405 F.Supp.2d 1177,] the court in *Woods v. Protection One Alarm Monitoring, Inc.*, 2007 WL 2391075, *11 (E.D.Cal. Aug.22, 2007), held that a libel action could be maintained under § 1681h(e) if malice could be proved, but concluded that plaintiff failed to allege or

prove a violation of § 1681s–2(b)"); but see also *Abouelhassan v. Chase Bank*, No. C 07–03951 JF (PVT), 2007 WL 3010421, *4 n. 7 (N.D.Cal. Oct.12, 2007) ("This Court agrees that § 1681h(e) should govern preemption of common law defamation and negligence claims, and therefore rejects Chase's blanket preemption argument based on the *Davis* holding").

**17.** In his opposition, Buraye argues that his defamation claim is not preempted because

within provisions of the statute that prohibit furnishers of information from reporting inaccurate information. See 15 U.S.C. § 1681s–2(a). Consequently, the court dismisses Buraye's common law negligence and defamation claims as preempted by § 1681t(b)(1)(F) of the FCRA.[18]

### 4. Whether the Preemption Provision Applies to Buraye's Claims Under the CCCRAA

■ Buraye's first cause of action asserts that Nationwide failed to comply with the CCCRAA, California Civil Code § 1785.10 et seq. As noted, § 1681t(b)(1)(F) preempts all state statutory and common law causes of action against furnishers of information, except those arising under two state statutes. California Civil Code § 1785.25(a) is one of the state statutes saved from preemption. See 15 U.S.C. § 1681t(b)(1)(F)(ii). Section 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." CAL. CIV.CODE § 1785.25(a).

While this provision is saved from FCRA preemption, it is notable that California Civil Code §§ 1785.25(g) and 1785.31, the provisions that create a private right of action to enforce § 1785.25(a),

---

he alleges, in part, that Nationwide "defamed plaintiff also to third parties [besides Equifax and Transunion] who are not 'credit reporting agencies.' " (Plaintiff's Opposition to Motion for Judgment on the Pleadings ("Pl.'s Opp.") at 3.) Buraye argues that since Nationwide is a "debt collector and does not qualify under FCRA as a 'credit reporting agency' and the third parties [ ] that defendant published false and untrue information to are also 'not credit reporting agencies' as to these actions, they do *not* fall under the ambiance, protection, or jurisdiction of the FCRA." (*Id.*) In other words, Buraye suggests that Nationwide reported false information to parties who are not credit-reporting agencies and that this falls outside the preemptive scope of the FCRA.

There are two problems with this claim. First, contrary to Buraye's assertion, his complaint alleges that Nationwide is "a collection agency and/or a credit reporting agency" and that, in the regular course of its business, it provided credit information to credit reporting agencies and "various mortgage loan companies, banks, and loan agencies." (Complaint, ¶ 4.) In describing the "regular course of business" of Equifax and Transunion—both of whom are credit-reporting agencies—Buraye uses identical language, i.e., he alleges that they supplied information regarding consumers "to various mortgage loan companies, banks, and loan agencies." (*Id.*, ¶¶ 2–3.) This indicates that, to the extent Buraye alleges Nationwide provided false information to third parties, he asserts it did so in its capacity as a credit reporting agency. Buraye cannot now disavow his clear allegation that Nationwide acted as a credit reporting agency in order to avoid preemption.

This point is underscored by the fact that Buraye does not specifically allege that Nationwide made a false report to anyone other than Transunion and Equifax in early 2007. (*Id.*, ¶ 7.) Indeed, the next mention of Nationwide in the complaint is found in paragraph sixteen, which alleges that "EQUIFAX, TRANSUNION, and NATIONWIDE, *consumer reporting agencies,* negligently and willfully furnished false and misleading consumer credit reports . . . to existing and potential creditors of plaintiff." (*Id.*, ¶ 16 (emphasis added).) This confirms that Buraye alleges that Nationwide reported information to third parties in its purported capacity as a credit reporting agency. See, e.g., *id.*, ¶ 32 (alleging without differentiation that all three defendants "made untrue and misleading statements about plaintiff's credit which was published to" third parties). Buraye's attempt, in the face of a preemption challenge, to suggest that Nationwide disseminated false information to third parties outside this context is simply not supported by the language of the complaint.

18. Because the court determines that Buraye's negligence claim is preempted by § 1681t(b)(1)(F), it need not consider whether the claim is also preempted by § 1681h(e).

are preempted. See *id.*, § 1785.25(g) ("A person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions"); *id.*, § 1785.31 ("Any consumer who suffers damages as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person"). This is true whether the court adopts the "total preemption" or "statutory" approach to interpreting § 1681t(b)(1)(F). As a result, Buraye's claim for violation of the CCCRAA is barred. See *Gorman*, 370 F.Supp.2d at 1011 ("When Congress enacted the FCRA, it expressly saved California Civil Code 1785.25(a) from preemption by carving out an exception for that subsection in the preemption provision, but it did not similarly save § 1785.25(g) or § 1785.31. Although § 1785.25(a) of the California Civil Code is not preempted and, therefore, MBNA can be held liable if it violated that statute, the proper parties to pursue such liability are Federal and State officials. The FCRA did not except from preemption § 1785.25(g) or § 1785.31, and thus those sections are preempted by 15 U.S.C. § 1681t(b)(1)(F). Without the benefit of those sections, Gorman has no private right of action to bring suit for a violation of § 1785.25(a)" (citations omitted)); *Lin v. Universal Card Services Corp.*, 238 F.Supp.2d 1147, 1152 (N.D.Cal.2002) ("Only § 1785.25(a) of the CCRAA, which does not provide for a private right of action, is excluded from preemption. Based on the plain language of the statute, Congress did not exclude from preemption CCRAA §§ 1785.25(g) and 1785.31"); *Quigley v. Pennsylvania Higher Educ. Assistance Agency*, C 00–1661 CRB, 2000 WL 1721069, *3 (N.D.Cal. Nov.8, 2000) ("Subsection (g) and section 1785.31[ ] are not included in the FCRA's exception to its preemption provision. That provision only exempts California Civil Code section 1785.25(a). Thus, based on a plain reading of the FCRA, any private right of action under the California Civil Code based on the wrongful acts of a 'furnisher of information' is preempted by the FCRA. This conclusion is consistent with the expressed intent of Congress to have the conduct of furnishers of information regulated exclusively by governmental entities" (footnote omitted)); *Potter v. Illinois Student Assistance Comm'n*, D 04–2493, 2004 WL 1203156, *6 (Cal.App. June 2, 2004).

## C. Buraye's Claims Against the Remaining Defendants

Nationwide brought this motion for judgment on the pleadings and did not seek judgment on Buraye's claims against the remaining defendants. The court's analysis of preemption applies specifically to "furnishers" of credit information. Consequently, it does not reach or address whether Buraye's claims against Equifax and Transunion, which are credit reporting agencies, are preempted by the FCRA. Rather, it finds that all of Buraye's claims against Nationwide are preempted and must be dismissed with prejudice.

## D. Leave to Amend

Although Buraye's state law claims against Nationwide are preempted, Buraye might state a claim against Nationwide under the FCRA. In the event that he is able to do so, the court grants Buraye twenty days leave to amend his complaint to add such a claim against Nationwide.

## III. CONCLUSION

For the reasons stated, the court grants Nationwide's motion for judgment on the

pleadings in its entirety. The court, however, gives Buraye twenty days' leave to amend the second cause of action in the event he can state a claim against Nationwide for violation of the FCRA. Buraye's state law claims against Nationwide are dismissed with prejudice and may not be reasserted.