Sergio L. **RAMIREZ**, Plaintiff,

v.

**TRANS UNION, LLC**, Defendant.

Case No. 12–0632 JSC.

United States District Court, N.D. California.

Oct. 17, 2012.

942

Andrew J. Ogilvie, Carol McLean Brewer, Anderson, Ogilvie & Brewer LLP, San Francisco, CA, James A. Francis, John Soumilas, Francis and Mailman, P.C., Philadelphia, PA, for Plaintiff.

Bruce Steven Luckman, Sherman Silverstein Kohl Rose and Podolsky, Moorestown, NJ, Julia B. Strickland, Stephen Julian Newman, Brian C. Frontino, Jeffrey Babcox Bell, Stroock Stroock and Lavan, LLP, Los Angeles, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 30)

JACQUELINE SCOTT CORLEY, United States Magistrate Judge.

In this putative class action, Plaintiff Sergio Ramirez alleges that Defendant Trans Union, LLC a credit reporting agency, violated the Federal Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agencies Act ("CCRAA") by failing to ensure "maximum possible accuracy" of its credit reports and failing to provide consumers with proper disclosures. Now pending before the Court is Defendant's motion for judgment on the pleadings on Plaintiff's CCRAA claims and to strike Plaintiff's request for injunctive relief.

## ALLEGATIONS OF THE COMPLAINT

Defendant is a credit reporting agency that sells consumer reports about millions of consumers every year. (Dkt. No. 1 ¶¶ 6–7.) Such reports sometimes include what is known as an "OFAC alert." An OFAC alert "is a specific type of data provided by consumer reporting agencies on credit reports signifying that the subject of the report is purportedly included in the list of the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons, which includes ter-

rorists, money launderers and narcotic traffickers." (*Id.* ¶¶ 15–16.) Defendant fails to include in a consumer's files an OFAC alert that Defendant reports about that consumer to a third party. Defendant must provide a consumer a copy of his file upon request. (*Id.* ¶¶ 24, 26.) Defendant also fails to advise consumers that they may dispute inaccurate OFAC alerts. (*Id.* ¶¶ 15–16, 27.) Further, "Defendant also fails to maintain reasonable procedures to assure the maximum possible accuracy of the OFAC alert information it sells about consumers in the first place;" for example, it uses a "name only" match to include an OFAC alert, and even then it need only be a partial name match. (*Id.* ¶¶ 28, 41–43.)

Plaintiff was denied an auto loan after Defendant provided an inaccurate consumer report to a car company, Dublin Nissan ("Nissan"), on or about February 27, 2011. (*Id.* ¶¶ 48–49, 55.) The consumer report Defendant provided to Nissan included an OFAC alert, suggesting that Plaintiff is listed as a specially designated or blocked person. (*Id.* ¶¶ 52–53.) Defendant created the OFAC alert by using a "name only" matching system comparing Plaintiff's name against OFAC's database. (*Id.* ¶¶ 15–16.) Defendant included the alert because two names similar to Plaintiff's are in the OFAC database: "Sergio Humberto Ramirez Aguirre" and "Sergio Alberto Cedula Ramirez Rivera." (*Id.* ¶ 54.) Plaintiff, in fact, is not an individual included on the OFAC list, and is not related to either of the two individuals in the database. (*Id.* ¶ 54.)

When Plaintiff called Defendant to complain and request a copy of his consumer file, Defendant indicated that his consumer file did not include an OFAC alert and he could not dispute information that did not appear in his file. (*Id.* ¶¶ 56–57.) At Plaintiff's request, Defendant subsequently mailed Plaintiff a copy of his consumer file, dated February 28, 2011. The file did not include any OFAC information." (*Id.* ¶¶ 58–62.) A few days later Plaintiff received a letter from Defendant advising him of the names, location, and birth date of those on the OFAC list who are considered a potential match to Plaintiff. (*Id.* ¶¶ 65–67.)

Plaintiff subsequently filed this putative class action. Plaintiff brings three causes of action under the FCRA and three under the CCRAA: 1) "willfully failing to provide consumers . . . with all information in the consumer's file," in violation of 15 U.S.C. §§ 1681g(a) and 1681n; 2) "failing to provide consumers . . . with a copy of their disclosure containing all information on that consumer," in violation of Cal Civ. Code §§ 1785.10 and 1785.31; 3) "willfully failing to provide . . . a summary of [consumers'] rights," in violation of 15 U.S.C. §§ 1681g(c) and 1681n; 4) "willfully failing to provide . . . a summary of consumers' rights," in violation of and Cal Civ.Code §§ 1785.15(f) [1] and 1785.31, 5) "negligently and willfully failing to maintain reasonable procedures to assure maximum possible accuracy of the consumer reports it sold," in violation of 15 U.S.C. §§ 1681e(b), 1681n and 1681o, and 6) "failing to follow reasonable procedures to assure 'maximum possible accuracy' of the reports it sold," in violation of Cal Civ.Code §§ 1785.14(b).

## LEGAL STANDARD

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard of review is "functionally identical" to

1. While Plaintiff titles this claim "VIOLATION OF THE CCRAA § 1785.15(f)," it appears Plaintiff mistakenly alleged violation of § 1785.10 in the body of the Complaint. (Dkt. No. 1 at 18.)

944

the Rule 12(b)(6) standard. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir.2011). Accepting all allegations of the non-moving party as true, judgment "is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Dismissal [of claims] can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

## DISCUSSION

Defendant argues that 1) the CCRAA prohibits Plaintiff from bringing simultaneous CCRAA and FCRA claims, 2) federal anti-terror laws implicitly preempt Plaintiff's CCRAA claims, and 3) the FCRA preempts the CCRAA remedy of injunctive relief. The Court will consider each argument in turn.

### A. California Civil Code § 1785.34(a) Permits Simultaneous FCRA and CCRAA Claims

Defendant first argues that Plaintiff's CCRAA claims are barred by the plain language of the CCRAA itself. The Act provides that "[a]ny consumer reporting agency or user of information against whom an action brought pursuant to Section 1681n or 1681o of Title 15 of the United States Code is pending shall not be subject to suit for the same act or omission under Section 1785.31." [2] Cal. Civil Code § 1785.34(a). Defendant argues that Plaintiff's CCRAA claims are barred because the FCRA claims "are pending" by

virtue of having been filed in this case, or, in the alternative, were pending when Plaintiff filed a FCRA action in the Eastern District of Pennsylvania which he dismissed without prejudice before filing this action.

█ The only California appellate court to address § 1785.34(a) held that it *does not* bar simultaneously filed claims. *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App.4th 548, 581, 46 Cal.Rptr.2d 233 (1995). The court "agree[d] with the trial court's assessment" that the "plain meaning" of § 1785.34(a) applies to "a circumstance where there is a prior action pending under the federal law, and someone brings a later action under the state law." *Id.* (internal quotation marks and citation omitted). This Court is required to follow *Cisneros* absent "convincing evidence" the California Supreme Court would hold otherwise. *Carvalho v. Equifax Info. Services, LLC,* 629 F.3d 876, 889 (9th Cir. 2010); *see also Alvarez v. Chevron Corp.,* 656 F.3d 925, 932 n. 7 (9th Cir.2011) (holding that the federal court was bound by a decision of the California Court of Appeal because there was no contrary California Supreme Court case on point and no convincing evidence that the California Supreme Court would reach a decision contrary to that of the California Court of Appeal). Thus, in *Guillen v. Bank of America Corp.,* 2011 WL 4071996 *4 (N.D.Cal. Aug. 31, 2011), the district court relied on *Cisneros* to deny defendants' motion to dismiss a CCRAA claim that was filed simultaneously with FCRA claims. The court reasoned that it "must defer to the interpretation of the California Court of Appeal [in *Cisneros* ] absent convincing evidence the California Supreme Court

**2.** Section 1785.31 provides a private right of action and remedies for violations of the

CCRAA.

would decide the matter differently." *Id.* This Court must do the same.

Defendant's reliance on *Drew v. Equifax Info. Servs., LLC,* 2009 WL 595459 *11 (N.D.Cal. Mar. 5, 2009) is unavailing. Although the court applied § 1785.34(a) to dismiss plaintiff's concurrently pled CCRAA claims as "duplicative," 2009 WL 595459 at *11, order vacated in part *on reconsideration,* 2010 WL 1136434 (N.D.Cal. Mar. 20, 2010) *aff'd in part, rev'd in part,* 690 F.3d 1100 (9th Cir.2012), the court did not did not mention, let alone address, *Cisneros.* The trial court's decision in *Legge v. Nextel Commc'ns., Inc.,* 2004 WL 5235587 (C.D.Cal. June 25, 2004), is unpersuasive for the same reason. *Id.* at *12 n. 16 (stating while considering a class certification motion that § 1785.34(a) "bar[s] dual recovery" without mentioning *Cisneros* ). Regardless of whether Defendant's interpretation of § 1785.34(a) is reasonable, or even the "most logical," this Court is bound by *Cisneros* absent convincing evidence the California Supreme Court would rule otherwise. Defendant offers none.

Defendant's alternative argument based on Plaintiff's previous filing in Pennsylvania is also unpersuasive. (Dkt. No. 40 at 9.) Plaintiff voluntarily dismissed his FCRA Pennsylvania action on January 26, 2012 (Dkt. No. 2, 2:12–cv–00356–PD (E.D. Pa)), and then filed this action on February 9, 2012. (Dkt. No. 1.) Black's Law Dictionary defines pending as "remaining undecided; awaiting decision." *Black's Law Dictionary* 1169 (8th ed. 2004). As Plaintiff voluntarily dismissed the Pennsylvania action before filing this action, Plaintiff did not have any FCRA claims pending within the meaning of § 1785.34(a) at the time he filed this action. Section 1785.34(a) does not bar Plaintiff's CCRAA claims.

## B. Federal Anti–Terror Laws Do Not Preempt the CCRAA

Next, Defendant argues that under the circumstances of this case, the federal anti-terror laws impliedly preempt the CCRAA. "The burden of asserting and supporting a defense of preemption rests on [Defendant]." *United States v. Skinna,* 931 F.2d 530, 533 (9th Cir.1990).

Federal law may pre-empt state law in three different ways. First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." In such cases of field preemption, the "mere volume and complexity" of federal regulations demonstrate an implicit congressional intent to displace all state law. Third, preemption may be implied when state law actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Bank of Am. v. City & County of San Francisco,* 309 F.3d 551, 558 (9th Cir. 2002).

Defendant maintains that Plaintiff's CCRAA claims must be dismissed based on field preemption. "Under field preemption, preemption is implied when Congress 'so thoroughly occupies a legislative field,' that it effectively leaves no room for states to regulate conduct in that field." *Whistler Investments, Inc. v. Depository Trust and Clearing Corp.,* 539 F.3d 1159, 1164 (9th Cir.2008) (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). "The Congressional purpose must be clear, for

[courts] are mindful of the adage that Congress does not cavalierly preempt state law causes of action." *Montalvo v. Spirit Airlines,* 508 F.3d 464, 470 (9th Cir.2007). Defendant. contends that that because Congress has "occupied the field" of anti-terrorism Plaintiff's state law claims are preempted. In particular, the federal government has enacted a program "to ensure that individuals who pose a security threat to the United States do not receive loans from or engage in other financial transactions with American businesses." (Dkt. No. 30 at 6:25–27.) "[F]ederal law requires 'financial institutions to implement reasonable procedures for ... consulting lists of known or suspected terrorists or terrorist organizations provided to the financial institution by any government agency to determine whether a person seeking to open an account appears on any such list.' " (*Id.* at 7:4–10 (*citing* 31 U.S.C. 5318(1)(2), 31 C.F.R. 103.121(b)(4)).)

█ While the statute and regulations cited by Defendant may evidence an intent by Congress to occupy the field of regulating to whom businesses may not extend credit based on terrorism concerns, they do not evidence an intent to occupy the field present here; namely, the information credit reporting agencies provide to businesses to facilitate the businesses' compliance with federal law. Indeed, these federal anti-terrorism laws do not regulate credit reporting agencies at all. Federal law does not mandate that they provide lenders with credit reports which include OCHA alerts and federal law does not govern what credit reporting agencies should report, if credit reporting agencies choose to report such information, or how to report such information. Accordingly, Defendant has not met its burden of showing that Plaintiff's CCRAA claims must be dismissed based on implied field preemption.

Defendant's emphasis on the "specific administrative procedures for resolving situations where an individual believes he has been placed on the OFAC list by mistake" is also unavailing. Defendant cites two regulations, 31 C.F.R. §§ 501.806 and 501.807, which concern procedures for requesting the "[un]blocking of funds ... due to mistaken identity" and "delisting from [OFAC's list of] specially designated nationals and blocked persons." Neither regulation addresses the circumstances alleged here: where a credit reporting agency identifies a consumer as possibly appearing on the OCHA list when the consumer in fact does not. It is therefore not reasonable to infer from these regulations that Congress left "no room for states" to legislate credit reporting procedures regarding OCHA alerts. *See Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608.

Moreover, as Defendant concedes, the substantive requirements imposed by the CCRAA provisions at issue here are virtually identical to those of the FCRA. Yet, in adopting the anti-terror laws and regulations relied upon by Defendant, Congress did not except regulation under the FCRA. Defendant does not explain how through the anti-terrorism laws Congress could have so thoroughly occupied the field of credit reporting agencies and OCHA alerts that it intended to preempt state laws when at the same time it allowed the Federal Trade Commission, and private litigants, to continue to regulate the exact same conduct through the FCRA. Defendant has not met its burden of proving field preemption.

## C. The FCRA Does Not Preempt the CCRAA Injunctive Remedy

Finally, Defendant moves to strike Plaintiff's demand for injunctive relief on the ground such remedy is pre-empted by

section 1681t(a) of the FCRA. The FCRA preemption provision provides:

> Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."

15 U.S.C. § 1681t(a). Sections (b) and (c) specifically detail the types of obligations which are preempted. For example, the FCRA provides that the states may not impose any laws "relating to the prescreening of consumer reports." 15 U.S.C. § 1681t(b)(1)(A). State laws which do not fall within subsections (b) or (c) may still be preempted, but only "to the extent that those laws are inconsistent with any provision [of the FCRA], and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a). The CCRAA liability provisions at issue in this lawsuit are not preempted, or, at least, Defendant has not argued that they are preempted, because they do not fall within section 1681t(b) or (c) and are not otherwise inconsistent with any provision of the FCRA. As explained, *supra*, they are virtually identical to the requirements imposed by the FCRA. Accordingly, they are saved from preemption by the FCRA.

■ Defendant nonetheless argues that the CCRAA's injunctive relief remedy found in § 1785.31(b) is preempted because it is "inconsistent" with the FCRA. Defendant contends that because the FCRA does not allow private litigants to obtain injunctive relief, the CCRAA's injunctive relief remedy is inconsistent with and thus preempted by the FCRA, section

1681t(a). While the FCRA remedy provision for private litigants does not exclude injunctive relief, it also does not include it. The only federal court of appeals to have addressed the issue held that while the Federal Trade Commission may obtain injunctive relief under the FCRA, a private litigant may not. *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268–69 (5th Cir.2000). District courts in the Ninth Circuit are generally in accord with the Fifth Circuit. *See Gauci v. Citi Mortgage*, 2011 WL 3652589 *3 (C.D.Cal. Aug. 19, 2011) (citing district court cases holding that a private litigant may not obtain injunctive relief under the FCRA). Assuming, without deciding, that the FCRA does not allow a private litigant to obtain injunctive relief, the question presented here—whether the FCRA pre-empts injunctive relief under the CCRAA—appears to be a matter of first impression. The impression—and conclusion—of this Court is that the injunctive relief remedy is not preempted.

There is no support for Defendant's assertion that providing private litigants with an additional remedy under the CCRAA is "inconsistent" with the FCRA. To the contrary, the Ninth Circuit's decision in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir.2009), suggests, if not compels, the conclusion that the additional remedy provision is not inconsistent with the FCRA. In *Gorman*, a credit card company, a "furnisher" of information to credit reporting agencies, challenged as preempted the same CCRAA remedy provision at issue here, section 1785.31. Among other contentions, the credit card company argued that the private right of action afforded litigants against credit furnishers under section 1785.31 was preempted by the FCRA because the FCRA expressly excludes a private right of action against furnishers. *Id.* at 1173 n. 35.

The Ninth Circuit disagreed. The court held that to the extent Congress had expressly saved the CCRAA liability provisions at issue from FCRA preemption, it must also have "intended also to save 'other remedies as are provided under State law' to enforce those liability rules." *Id.* The court emphasized that the FCRA's legislative history and the Federal Trade Commission's interpretation of 1681t(a) support the court's holding. "The Senate Report concluded that 'no State law would be preempted [by the FCRA] unless compliance would involve a violation of Federal law.' S.Rep. No. 97–517, at 12 (1969)." *Id.* And "[t]he Federal Trade Commission, charged with enforcing the FCRA, similarly understands the 'basic rule' governing preemption under the FCRA: Section 1681t(a) preempts state law 'only when compliance with inconsistent state law would result in a violation of the FCRA.'" *Id.* (citing 16 C.F.R. pt. 600 apx. § 622 ¶ 1). Here, as in *Gorman,* compliance with state law—the availability of an injunctive remedy to private litigants—would not result in a violation of a federal law. Thus, the availability of the remedy is not inconsistent with the FCRA. Indeed, at oral argument Defendant conceded that it was not aware of any case holding a state law inconsistent with, and therefore preempted by, the FCRA because it includes a remedy not available under the FCRA.

Defendant's reliance on *Lin v. Universal Card Servs. Corp.,* 238 F.Supp.2d 1147 (N.D.Cal.2002) and on *Howard v. Blue Ridge Bank,* 371 F.Supp.2d 1139, 1146 (N.D.Cal.2005), is misplaced. Although both cases held that the private right of action available in section 1785.31 was preempted by the FCRA, both cases were decided before *Gorman.* Indeed, *Carvalho v. Equifax Information Services, LLC,* 629 F.3d 876 (9th Cir.2010) explicitly recognizes that *Gorman* abrogated *Lin. Id.* at 888.

Finally, the Court declines Defendant's invitation to adopt a different interpretation of "inconsistent with" in section 1681t(a) in light of the particular circumstances of this case; namely, where the credit reporting agency is providing information to lenders based on "federal data" to facilitate the lenders' compliance with federal law. There is no precedent for applying different interpretations to section 1681t(a) depending on the allegations of a particular case. Defendant's contention is merely an alternative approach to arguing that field preemption should apply. Again, the Court is not persuaded.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is DENIED.

This Order disposes of Docket No. 30.

**IT IS SO ORDERED.**